THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BRIAN K. COLEMAN, Defendant-Appellant.
First District (3rd Division)   No. 1—87—1919

Opinion filed August 1, 1990.

Randolph N. Stone, Public Defender, of Chicago (Ellen Fishbein and Hugh Stevens, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Gael O'Brien, and Adam D. Grosch, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendant Brian K. Coleman was found guilty of robbery and burglary of an automobile and sentenced to serve seven years in the Illinois Department of Corrections. Defendant was charged along with codefendant Steve Davis. Davis was tried separately by the court and is not a party to this appeal. On appeal, Coleman argues that (1) the trial court erred in failing to exclude the victim's hearsay testimony regarding the recovery of her stolen purse; (2) improper remarks made by the State during opening and closing arguments denied defendant a fair trial; and (3) the trial court improperly relied on defendant's prior section 10 probation (Ill. Rev. Stat. 1983, ch. 56½, par. 710) when sentencing him to serve seven years in prison and his sentence is grossly disparate to that of his codefendant. We affirm.

Carmen Devivies testified on behalf of the State at trial. Ms. Devivies testified that on the afternoon of November 24, 1986, she was driving northbound on Pulaski Avenue in Chicago. She stopped her 1985 red Nissan Sentra automobile for a red light about two or three car lengths south of the intersection of Pulaski and Madison. Ms. Devivies testified that as she sat in her car she momentarily looked to her left when suddenly she heard a loud shattering sound, turned to her right and saw glass coming toward her. Ms. Devivies turned away from the glass, and when she looked back to the right, she observed a hand reaching for her purse on the car seat. Ms. Devivies grabbed the strap of her purse and began to struggle with the person who was also grabbing the purse. Ms. Devivies was unable to maintain control, and the person grabbed the purse and ran. Ms. Devivies was unable to observe the face of the offender. After the incident, she immediately drove home and later called the police.

James Lemon also testified on behalf of the State. Lemon, an 11th District beat representative and member of the Westside People for Progress Organization, testified that at approximately 1:30 or 2 p.m. on November 24, 1986, he and three other citizens were watching the intersection of Madison and Pulaski Streets because numerous

"smash and grabs" had been reported in that area. Lemon testified that at approximately 5 p.m., he observed defendant, whom he knew by the nickname "Kojak," and codefendant Davis looking into car windows. At approximately 5:30 p.m. Lemon observed both defendants approach a red Nissan auto which was stopped in traffic, northbound on Pulaski. Lemon testified that Davis smashed the car window and removed a purse while Coleman stood two to three feet away looking around the area. After Davis retrieved the purse, both defendants ran south on Pulaski and then east on Monroe. Moments later, an unmarked patrol car passed by and Lemon told the police what he had observed and gave them a description of the offenders. Approximately 15 minutes later, the police returned with the defendants, and Lemon identified them as the offenders.

Chicago police officer Eugene Zielinski was the State's final witness at trial. He testified that on November 24, 1986, he was working as an 11th District tactical officer assigned to watch Pulaski Avenue for "smash and grabs" in an unmarked car. Officer Zielinski testified that at approximately 5:30 p.m., while driving northbound on Pulaski Avenue, he observed Coleman and Davis in the vicinity of Adams and Pulaski. Zielinski continued driving, and when he reached the intersection of Madison and Pulaski, he observed broken glass on the street. He then talked with Lemon. Zielinski was informed by Lemon that defendants had just committed a "smash and grab." Zielinski and his partner pursued and apprehended the defendants at Jackson and Pulaski and returned them to the scene of the crime for identification.

In his defense, defendant introduced into evidence a photograph of the area where the crime occurred. Following closing arguments, the jury found defendant guilty of burglary to auto and robbery. Davis was found guilty of the same offenses by the court.

Following a sentencing hearing, defendant was sentenced to serve seven years in the Illinois Department of Corrections. Davis was initially sentenced to serve three years in the Illinois Department of Corrections, but after a hearing on his motion to reconsider sentence, his sentence was vacated and he was resentenced to three years' probation with the first 54 days to be served in the Cook County Department of Corrections. This appeal followed.

Defendant first argues that the trial court erred in failing to exclude the complainant's hearsay testimony regarding the recovery of her stolen purse. We disagree.

■■ ■ When out-of-court statements are used for the purpose of explaining an actor's conduct and are not used to establish the truth or falsity of the out-of-court statements, such statements do not con-

stitute hearsay evidence. (*People v. Bryant* (1984), 123 Ill. App. 3d 266, 275, 462 N.E.2d 780, 786; *People v. Camp* (1984), 128 Ill. App. 3d 223, 230, 470 N.E.2d 540.) In the present case, while Ms. Devivies was testifying regarding the recovery of her purse, the following colloquy occurred:

"ASSISTANT STATE'S ATTORNEY: Did you ever get your purse back?

MS. DEVIVIES: I got a call about two weeks ago, maybe roughly two weeks ago, from a janitor at a public school in that vicinity telling me ***.

DEFENSE COUNSEL: Objection, judge.

THE COURT: Objection overruled. The answer will stand as far as she received a call from the janitor. She cannot go into the substance of that conversation.

ASSISTANT STATE'S ATTORNEY: What did you do after you received that call from the janitor of the school in the vicinity?

DEFENSE COUNSEL: Objection, judge.

THE COURT: Objection overruled. You may answer.

MS. DEVIVIES: I went and picked it up.

ASSISTANT STATE'S ATTORNEY: And what was inside the purse when you picked it up?

MS. DEVIVIES: Pretty much the same stuff that had been in there that I could remember when they stole it except for the money."

Clearly, Ms. Devivies testified only that she received a phone call from a janitor at a school in the vicinity of the scene of the crime and that she went to the school and retrieved her purse. Ms. Devivies did not offer any testimony regarding the substance of her conversation with the janitor. In fact, the court prohibited Ms. Devivies from revealing the substance of her conversation with the janitor. In sum, Ms. Devivies did not offer any hearsay evidence. Her testimony merely established what her conduct was regarding the recovery of her purse and what items were missing from the purse. We therefore conclude that the trial court did not err in failing to exclude the victim's testimony regarding the recovery of her purse.

■ Defendant next argues that improper remarks made by the State during opening and closing arguments denied him a fair trial. We disagree. The purpose of an opening statement is to apprise the jury of facts each party expects to prove in the course of the trial, and absent deliberate misconduct, any error is not a ground for reversal unless the reference resulted in substantial prejudice to the

defendant. (*People v. Davis* (1982), 104 Ill. App. 3d 512, 516, 432 N.E.2d 1134, 1137.) A prosecutor is allowed wide latitude in closing arguments, and a misstatement by a prosecutor does not deprive defendant of a fair trial, unless such remark clearly affected the outcome of the case. *Davis*, 104 Ill. App. 3d at 516.

Every defendant is entitled to a trial free from improper prejudicial comments or arguments by the prosecutor. (*People v. Bivens* (1987), 163 Ill. App. 3d 472, 482, 516 N.E.2d 738, 744.) Whether a prosecutor's comments or arguments constitute prejudicial error is evaluated according to the language used, its relation to the evidence, and the effect of the argument on the defendant's right to a fair and impartial trial. (*People v. Rader* (1988), 178 Ill. App. 3d 453, 462, 532 N.E.2d 1365, 1370.) Remarks in closing arguments must be examined in the context of the remarks made by both the State and the defense; but, all remarks made in the closing arguments must be based upon the evidence presented or reasonable inferences drawn therefrom. *People v. Lewis* (1990), 198 Ill. App. 3d 976, 982.

Defendant complains that remarks made by the prosecutor during the opening statement had the effect of lessening the State's burden of proving defendant guilty beyond a reasonable doubt. The prosecutor's remarks were as follows:

"The T.V. cameras you may have seen down in the lobby are not here to see what's going on in this courtroom because, ladies and gentlemen, what goes on in this courtroom is pretty much like life, it's pretty routine.

You heard Judge Urso tell you yesterday that this case wasn't going to take very long. That's true, it's not going to take very long. There are very few witnesses. Like life, as I said, it's pretty routine. It's like any other case that happens in any other courtroom in this building on any given day. What we're doing here is not entertainment. We're doing our jobs, all of us here. This is our job. Today it becomes your job. You're not an audience. We're not actresses and actors. You're not going to see anybody up there playing any kind of role. People testifying from that witness stand will be telling you things that happened to them."

Contrary to defendant's assertions, the above-quoted portions of the State's opening statement do not in any way touch on the issue of the State's burden of proof. The statement was merely an attempt to describe to the jurors the rather routine nature of actual as opposed to fictionalized criminal trials and to explain the roles of the different parties in the process. We find nothing prejudicial in the prose-

cutor's opening statement and conclude that the trial court did not abuse its discretion in allowing these remarks.

Defendant also complains that he was prejudiced by the State's closing rebuttal argument wherein the prosecutor argued:

"Ladies and gentlemen of the jury, you know we live every day, our lives go by and we live alone for the most part, some of us. We have family, some of us. Some of us have friends. Some of us have no friends. On the night of November the 24, 1986, Carmen Devivies was alone. She had no friends. She had only her own automobile. And these two individuals like hunters in the woods going after baby seals or small animals—.

DEFENSE COUNSEL: Objection.

THE COURT: He may make argument.

ASSISTANT STATE'S ATTORNEY: —came up to that automobile and smashed that window as any coward would do, someone who could not defend themselves, and took the purse from Carmen Devivies.

Now let's all use our common sense. Nobody told you to leave it out of the courtroom when you came in here today or yesterday. This man doesn't have to do anything as far as reaching into the car. He was the lookout, ladies and gentlemen. He was the one who set it up. He was the one that went out into the street and looked for the car. He looked for the pigeon. He found the pigeon.

DEFENSE COUNSEL: Objection to that, judge.

THE COURT: He may make reasonable comments."

The prosecutor's rebuttal closing argument was based on the evidence and reasonable inferences therefrom. The evidence at trial indicated that defendant and Davis worked together to accomplish the robbery of Ms. Devivies and the burglary of her automobile. Mr. Lemon testified that he watched the defendants as they walked around and looked into several cars before they finally burglarized and robbed Ms. Devivies. The prosecutor's argument was based on the evidence and the State's theory of the case. We therefore conclude that the prosecutor's remarks made during closing rebuttal argument did not deny defendant his right to a fair trial.

Finally, defendant argues that the trial court improperly relied on his prior section 10 probation when sentencing him to serve seven years in prison and that his sentence is grossly disparate to that of his codefendant. We disagree.

■ The court, when sentencing a defendant, may properly receive proof of criminal conduct for which no prosecution occurred.

(*People v. La Pointe* (1981), 88 Ill. 2d 482, 499, 431 N.E.2d 344, 351.) The imposition of a sentence is a matter of judicial discretion, and absent an abuse of discretion, the sentence of the trial court will not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.) Fundamental fairness requires that defendants who are similarly situated should not receive grossly disparate sentences. (*People v. Jackson* (1986), 145 Ill. App. 3d 626, 646, 495 N.E.2d 1207, 1222.) However, defendants are not similarly situated if there is a difference in their rehabilitative potential or a difference in the nature and extent of their participation in the crime. (*Jackson*, 145 Ill. App. 3d at 646.) Rehabilitative potential may be evidenced by a defendant's criminal record. *People v. Knight* (1985), 139 Ill. App. 3d 188, 197, 486 N.E.2d 1356, 1362.

█ In the present case, the court did not abuse its discretion in sentencing defendant to serve seven years in prison for the offenses of robbery and burglary. Defendant's criminal history, exclusive of the prior section 10 probation, justifies the court's sentence. Defendant was on probation for burglary at the time that the offenses in this case were committed. In addition, defendant had prior misdemeanor convictions and probation sentences. In sum, defendant's criminal history showed a lack of rehabilitative potential, and a term of imprisonment was appropriate under the facts. Similarly, defendant cannot be heard to argue that his sentence is disparate to that of his codefendant where the record indicates that the codefendant did not have a prior felony conviction at the time of sentencing.

Accordingly, for all of the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CERDA, P.J., and WHITE, J., concur.