FIFTH DIVISION
May 21, 2010

No. 1-08-2609

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No.07CR17542 |
| | ) | |
| PRIEST WILLIS, | ) | The Honorable |
| | ) | John P. Kirby, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

After a jury trial, defendant Priest Willis was convicted of delivery of less than one gram of heroin within 1,000 feet of a school. The trial court sentenced defendant, based on prior criminal history, as a Class X offender to eight years' imprisonment. On appeal, defendant does not contest the sufficiency of the evidence to sustain his conviction, but contends that: (1) the trial court's failure to strictly comply with Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007), requires reversal and remand for a new trial; (2) he was prejudiced by the State's allegedly improper comments during closing arguments; and (3) his sentence is excessive in light of the nonviolent nature of the crime and the existence of mitigating factors. Defendant also contends, and the State properly agrees, that he was entitled to an additional four days of credit for time served and he is entitled to a reduction in the total amount of fees assessed against him. For the following reasons, we affirm defendant's conviction and sentence, and modify the mittimus.

BACKGROUND

Defendant's conviction arose from a drug transaction which occurred less than 300 feet from an elementary school on August 2, 2007, and was witnessed by various narcotics task force officers of the Chicago police department. The task force was composed of Officers Evangelides, Lopez, Srisuth, Flores, Dobek, Pentimone, Rivera, and Padar. Officer Evangelides served as the undercover buy officer and purchased drugs from two dealers that morning. The first dealer was a man named Keith Adams who was 6 feet tall and 210 pounds, and the second was defendant, who was 5 feet, 8 inches tall and 180 pounds.

Officer Evangelides testified that he saw defendant standing at 4936 West Maypole. Defendant asked Officer Evangelides if he was looking for "blows," which is the street term for heroin. Officer Evangelides exchanged a prerecorded $20 bill for two plastic baggies with black scorpion logos on them. The substance inside was later determined to be heroin. After the purchase, Officer Evangelides walked two blocks to his undercover vehicle from which he radioed the rest of his team to inform them of the purchase.

Officer Rivera testified that he detained defendant while Officer Pentimone detained Adams. Officer Evangelides identified both men. Officer Rivera recovered $70 from defendant, including the prerecorded $20 bill. Police searched the area and found a rock across the street with bags containing what was later determined to be heroin beneath it.

The State rested, and the defense presented evidence by way of defendant's testimony. Defendant testified that he fixed friends' and neighbors' cars for a living and was paid in cash for doing so. He testified that, on August 1, 2007, he put new brakes on Adams' car. Adams

2

instructed defendant to meet him the following day to collect the $20 he was owed. On August 2, 2007, defendant met Adams at 4936 West Maypole Street, and Adams paid defendant with a single $20 bill. Then, defendant and Adams stood on the sidewalk for about 15 minutes, discussing the condition of Adams' car. During that time, nobody else approached Adams, and defendant testified that Adams was not selling drugs. Defendant denied knowing of any drug sales in the area. Soon, the police arrived. Defendant and Adams were arrested. Defendant denied he had been selling drugs.

Defense rested. On this evidence, the jury found defendant guilty. Defendant appeals.

ANALYSIS

I. Rule 431(b)

On appeal, defendant first contends that he was denied his right to a fair and impartial jury because the trial judge failed to question the prospective jurors regarding the four principles enumerated in People v. Zehr, 103 Ill. 2d 472 (1984), and codified in Rule 431(b). Under that rule, the trial court must ask jurors whether they understand and accept that: (1) defendant is presumed innocent of the charges against him; (2) the State must prove defendant guilty beyond a reasonable doubt; (3) defendant is not required to present evidence on his behalf; and (4) defendant has the right not to testify and his failure to do so cannot be held against him. Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007. Specifically, defendant argues that he was prejudiced where the trial court failed to admonish the potential venire regarding defendant's right not to testify. Defendant also argues that he was prejudiced

where the trial court gave only 20 of the 32 prospective jurors that were admonished as to the remaining Zehr principles an opportunity to respond to whether or not they understood and accepted the principle regarding defendant's right not to present evidence.

The State does not dispute that the trial court erred in failing to strictly comply with Rule 431(b), but asserts that defendant forfeited review of this error because he failed to object to it at trial or raise it in a timely filed posttrial motion. See People v. Enoch, 122 Ill. 2d 176, 186 (1988) (failure to properly preserve an alleged error by both an objection at trial and a written posttrial motion constitutes a procedural default of that error on review).

Defendant admits that he failed to properly preserve this issue for appeal, but urges us to review the error under the second prong of the plain error exception because the error itself was so serious that he was denied a substantial right and thus a fair trial, requiring automatic reversal. 134 Ill. 2d R. 615; People v. Herron, 215 Ill. 2d 167, 186-87 (2005) (plain error rule permits consideration of errors even though technically waived for review where the evidence is closely balanced or where the claimed error is of such magnitude that there is a substantial risk that the defendant was denied a fair and impartial trial). In support of this argument, defendant relies on People v. Graham, 393 Ill. App. 3d 268 (2009), and People v. Anderson, 389 Ill. App. 3d 1 (2009) (Anderson I), which so found.

The record clearly shows that defendant failed to object to the claimed error at trial and also failed to raise it in his motion for a new trial. As such, he did not properly preserve the error for appellate review. Enoch, 122 Ill. 2d at 186. Although this generally results in forfeiture, this court may notice plain error or defects affecting substantial rights. People v. Piatkowski, 225 Ill.

No. 1-08-2609

2d 551, 564-65 (2007).

We examine whether the trial court complied with Rule 431(b) to determine whether there was error here. See People v. Williams, No. 1-07-2657, slip op. at 5 (April 8, 2010).

In Zehr, 103 Ill. 2d at 477, our supreme court held that a trial court erred during *voir dire* where it refused defense counsel's request to ask questions regarding the State's burden of proof, defendant's right not to testify, and the presumption of innocence. Specifically, the court held:

> "We are of the opinion that essential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him. If a juror has a prejudice against any of these basic guarantees, an instruction given at the end of trial will have little curative effect." Zehr, 103 Ill. 2d at 477.

In 1997, our supreme court amended Rule 431(b) to ensure compliance with the Zehr requirements. 177 Ill. 2d R. 431, Committee Comments. Under that amendment, the court was required, if requested by the defendant, to ask the potential jurors, individually or as a group, whether they understand the Zehr principles. 177 Ill. 2d R. 431(b). Effective May 1, 2007, our supreme court again amended Rule 431(b), omitting the language "[i]f requested by the defendant," and leaving the remainder of the rule unchanged. Rule 431(b) now provides, *inter alia*:

5

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.
>
> The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

This rule, which was in effect at the time of defendant's trial, imposes a *sua sponte* duty on the trial court to question potential jurors as to whether they understand and accept the enumerated principles integral to a fair trial. Williams, slip op. at 6. Construction of a supreme court rule is a question of law, which we review *de novo*. Robidoux v. Oliphant, 201 Ill. 2d 324, 332 (2002).

The record shows that as *voir dire* began in this case on July 7, 2008, the potential venire was brought into the courtroom and seated. The clerk called the first 20 names to be seated in

No. 1-08-2609

the courtroom, and those 20 potential jurors were reseated in the jury box. Then, the court addressed the entire potential venire as a group, stating:

"THE COURT: I'm going to ask you at this point two propositions of law. Do each of you understand that under the law a defendant is presumed to be innocent of the charges against him, this presumption remains with him throughout every stage of the proceedings and is not overcome unless from all of the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty? Do each of you in the jury room in the jury box and the chairs in front understand that principle of law; if so, please raise your right hand. All of the jurors have raised their right hand. And will each of you follow that principle of law; if so, please raise your right hand. Let the record reflect all of the jurors have raised their right hand."

The court continued:

"THE COURT: Do you also understand that the State has the burden of proving defendant guilty beyond a reasonable doubt and this burden remains on the State throughout the case, the defendant is not required to prove his innocence nor is he required to present any evidence in his own behalf, he may rely upon the presumption of innocence. Do each of you both understand that

7

principle of law and will you follow that principle of law; if so,

please raise your right hand. Let the record reflect twenty of the

potential jurors have raised their hand."

Accordingly, all of the potential jurors were present in the courtroom when the court admonished

them of the Zehr principles regarding the presumption of innocence and the State's burden of

proof. All of the potential jurors were questioned and responded that they understood and

accepted these principles. However, only the first panel of 20 jurors who were seated in the jury

box responded to the court's questioning regarding defendant's right not to present evidence.

Ultimately, 8 jurors were chosen from the original panel of 20, while 4 jurors and 2

alternate jurors were chosen from a second panel. The second panel was not re-admonished

regarding the Zehr principles. The court did not admonish any of the potential jurors that

defendant's failure to testify could not be held against him, nor ask whether they understood and

accepted that principle.

Trial proceeded. Defendant testified on his own behalf. Following closing arguments by

both parties, the court advised the jurors:

"THE COURT: The defendant is presumed to be innocent

of the charge against him. This presumption remains with him

throughout every stage of the trial and during your deliberations on

the verdict and is not overcome unless from all the evidence in this

case you are convinced beyond a reasonable doubt that he is guilty.

The State has the burden of proving the guilt of the defendant

8

beyond a reasonable doubt, and this burden remains on the State throughout the case. The Defendant is not required to prove his innocence."

The record thus convinces us that the trial court complied with Rule 431(b) as to two of the four Zehr principles, but that it only questioned the first jury panel as to whether they understood and accepted the principle that defendant is not required to present evidence on his own behalf, and it failed to question any of the jurors as to whether they understood or accepted the principle that defendant's failure to testify could not be held against him, and whether his failure to do so would affect their ability to be fair and impartial. We therefore find error, as the *voir dire* was incomplete. See Williams, slip op. at 6.

Next, the State maintains that, given overwhelming evidence of defendant's guilt, the court's failure to ask the venire members whether they understood and accepted the principle that defendant's decision not to testify cannot be held against him as well as its failure to ask some of the venire members whether the understood and accepted other Zehr principles was harmless error. In doing so, the State relies on the reasoning of our supreme court in People v. Glasper, 234 Ill. 2d 173, 199-200 (2009), where that court, faced with similar issues to the one at bar but guided by the pre-amended Rule 431(b), held that the trial court's error was not a fundamental one and that a harmless error analysis applied.

Defendant rejects the State's assertion, based on Glasper, that the error is subject to harmless error analysis and maintains that, under the second prong of the plain error doctrine, the trial court's failure to comply with Rule 431(b) denied him a substantial right, an impartial jury,

and thus a fair trial, which requires automatic reversal. "[I]ssues raised on appeal are preserved for review by objecting during trial and filing a written posttrial motion raising the alleged error [citation], and when a defendant does not object at trial to a subsequently claimed error, a plain error analysis is appropriate. Williams, slip op. at 7.

Under a plain error analysis, we may consider errors even though technically waived for review where: (1) the evidence is closely balanced; or (2) the claimed error is of such magnitude that there is a substantial risk the defendant was denied a fair and impartial trial. Herron, 215 Ill. 2d at 186-87.

Having established error, we consider whether the error denied defendant a substantial right such that it requires automatic reversal under the second prong of the plain error doctrine, or whether we may affirm defendant's conviction if we find that the error was harmless, in light of the evidence presented against him at trial.[1] In doing so, we note that in a plain error analysis, defendant bears the burden of persuasion as to whether the error was prejudicial to his case; and, if that burden is not met, defendant's conviction will stand. Herron, 215 Ill. 2d at 181-82.

We first consider whether the first prong has been satisfied. In doing so, we must consider whether the outcome of defendant's trial may have been affected by the trial court's failure to ask potential jurors if they accepted and understood that defendant had the right not to

---

[1]At the time of this opinion, People v. Thompson, No. 1-07-2891 (July 16, 2009), *appeal allowed*, 234 Ill. 2d 547 (2009), is pending before our supreme court. In Thompson, the First District, in an unpublished order under Supreme Court Rule 23, held that a violation of Rule 431(b) constituted plain error under the second prong, triggering automatic reversal.

testify, and by the trial court's failure to ask some of the potential jurors if they accepted and understood that defendant was not required to offer evidence on his own behalf. The defendant must establish that the error alone could have led to his conviction. Herron, 215 Ill. 2d at 186-87.

Defendant has not met this burden. The evidence here was not closely balanced, where multiple narcotics task force police officers testified that defendant sold drugs and $20 of pre-recorded funds were found in defendant's possession upon his arrest. Specifically, Officer Evangelides testified that he was the designated "buy" officer, who was responsible for purchasing street drugs with prerecorded bills. Officer Evangelides testified that, as he approached defendant on the street on the day in question, defendant asked him if he was "looking for blows," a street term for heroin. Officer Evangelides said yes and purchased two baggies containing tinfoil packets of suspected heroin for $20. He paid for these drugs with the prerecorded bills. Officer Evangelides identified defendant in open court as the person who sold him drugs. Officer Rivera testified that he was part of the narcotics unit involved in the controlled drug purchase on the day in question, and he recovered the $20 prerecorded bill from defendant's front pocket. Officer Srisuth testified that he observed Officer Evangelides talk with defendant and then saw defendant hand a small item to Officer Evangelides in exchange for money. Defendant testified that he did not sell drugs to Officer Evangelides and did not, in fact, talk with anybody other than Adams before his arrest. He testified that Adams paid him $20 for work he had performed on his car the previous day, and he denied having sold drugs as well as knowing of drug sales in the area. The evidence here was not closely balanced and, accordingly,

11

does not rise to the level of a first-prong plain error exception.

We now consider whether the second prong under the plain error analysis has been satisfied. In resolving this issue, we observe that whether a violation of Rule 431(b) is a second-prong plain error is the source of divergent lines of cases in this court. Our supreme court has issued supervisory orders on both sides of the issue, directing that appellate decisions be reconsidered in light of Glasper. See People v. Hammonds, No. 1-08-0194, slip op. at 53 (February 11, 2010) (listing the cases vacated by our supreme court).

Upon further review of the cases in the wake of Glasper, there remains a split in authority among the districts of this appellate court, as well as among the divisions of the court within this district. Those cases that have found that a trial court's failure to comply with Rule 431(b) denies a defendant a substantial right and a fair trial, thus obviating the need for a harmless error inquiry, include: Graham, 393 Ill. App. 3d at 275 (First District, first division 2009); Anderson II, No. 1-07-1768, slip op. at 6 (First District, first division 2010) (reached the same result after reviewing the case in light of Glasper); People v. Wilmington, 394 Ill. App. 3d 567, 575 (1st Dist., 4th Div. 2009) (plain error requiring reversal and remand for a new trial); and People v. Madrid, 395 Ill. App. 3d 38, 46-48 (First District, fourth division 2009) (agreeing with Wilmington).

Other divisions have found the reasoning of Glasper applicable to the revised rule, and concluded that the error in admonishments was not a fundamental one, and, therefore, was subject to a harmless error analysis. These cases include: People v. Wheeler, No. 1-08-1370, slip op. at 20 (First District, first division 2010); People v. Haynes, No. 1-08-0805, slip op. at 19

No. 1-08-2609

(First District, second division 2010); and People v. Magallanes, 397 Ill. App. 3d 72, 83-84 (1st Dist., 3rd Div. 2009) (trial court's failure to comply with Rule 431(b) does not mandate automatic reversal, either under harmless error or plain error analysis; rather, an analysis of the facts and circumstances of each particular case is required to determine wither defendant was denied a fair trial); Williams, slip op. at 10 (First District, fourth division 2010) (holding, under the distinct facts of the case, that the trial court's failure to comply with Rule 431(b) did not affect the integrity of the judicial process); Hammonds, No. 1-08-0194, slip op. at 53-54 (First District, sixth division 2010) (applying a harmless error analysis to the trial court's failure to strictly comply with Rule 431(b) and concluding that, in light of the overwhelming evidence of defendant's guilt, the error was harmless beyond a reasonable doubt).

The Fourth Division of this court recently considered a similar issue in Williams, where the defendant testified at trial, was convicted, and later argued on appeal that he was prejudiced where the court, in contravention of Rule 431(b), failed to admonish the jury that his failure to present evidence on his own behalf could not be held against him. In Williams, we found no second-prong plain error, and stated:

"This is analogous to a situation in which a trial court does not inform a defendant of his right to a jury trial but he has a jury trial and is convicted. If a defendant actually has a jury trial, he cannot then appeal an unfavorable verdict on the grounds that the trial court did not inform him that he had a right to a jury trial." Williams, slip op. at 9-10 (First

13

District, fourth division 2010).

We find <u>Williams</u> analogous to the case at bar, where defendant presented evidence through his own testimony and cannot, now, argue that he was prejudiced when the court failed to properly inform the jury that, if defendant did not present evidence or did not testify, it could not be held against him. No plain error occurred in this case, and reversal is not required.

## II. Closing Arguments

Next, defendant contends that he was denied his right to a fair trial based on prosecutorial error during closing arguments. Specifically, defendant argues that he was prejudiced when the prosecution made the following statements during closing arguments:

> "[PROSECUTOR]: When this man goes to work each day he doesn't go to an office building like most people do. * * * This Defendant sets up shop next to Spencer Elementary School. And there he goes to do his work by selling drugs."

And:

> "[PROSECUTOR]: The Defendant is a drug dealer and he deals drugs next to a school. Put him out of business and find him guilty."

And, in rebuttal, the State responded to defendant's arguments regarding a lack of fingerprint evidence:

> "[PROSECUTOR]: I'm sure you figured out by now this is not

> CSI. It is not TV. It really doesn't work that way. Certainly we
>
> are not as efficient as TV. But anyway, this resembles CSI as
>
> much as [NASA] space travel resembles Star [Trek]."

Defendant argues that the first and second complained-of comments prejudiced defendant, "as they suggested past illegal conduct and plans of future illegal conduct that were never introduced into evidence." He argues that the third complained-of comment was an attempt to downplay "the lack of physical evidence against [defendant] by discrediting techniques commonly viewed on the popular television program CSI," which "lowered the jury's expectation of the amount of evidence needed to convict [defendant], thereby lessening their own burden of proof."

Initially, we note that defendant has forfeited this issue by failing to object at trial and failing to include it in his posttrial motion. Enoch, 122 Ill. 2d at 186 (failure to properly preserve an alleged error by both an objection at trial and a written posttrial motion constitutes a procedural default of that error on review). Defendant admits that he failed to properly preserve this issue for appeal, but urges us to consider it as plain error on the bases that substantial rights are involved and that the evidence was closely balanced. 134 Ill. 2d R. 615; Herron, 215 Ill. 2d at 186-87 (plain error rule permits consideration of errors even though technically waived for review where the evidence is closely balanced or where the claimed error is of such magnitude that there is a substantial risk that the defendant was denied a fair and impartial trial). We first consider whether any error occurred at all. People v. Durr, 215 Ill. 2d 283, 299 (2005).

A prosecutor is allowed wide latitude during closing arguments. People v. Nieves, 193 Ill. 2d 513, 532-33 (2000). A prosecutor may comment on the evidence presented at trial, as well

15

as any fair, reasonable inferences therefrom, even if such inferences reflect negatively on the defendant. People v. Nicholas, 218 Ill. 2d 104, 121 (2006). Remarks made during closing arguments must be examined in the context of those made by both the defense and the prosecution, and must always be based upon the evidence presented or reasonable inferences drawn therefrom. People v. Coleman, 201 Ill. App. 3d 803, 807 (1990). The character and scope of closing argument are left largely to the discretion of the trial court, and we will not disturb its decision absent an abuse of that discretion. See People v. Aleman, 313 Ill. App. 3d 51, 66-67 (2000). We will only reverse a conviction on the ground of improper argument if the challenged comments constituted a material factor in the conviction, without which the jury might have reached a different verdict. See Aleman, 313 Ill. App. 3d at 66-67. "The dispositive question in the case at bar, therefore, is whether the prosecutor's argument resulted in substantial prejudice to defendant and constituted a material factor in his convictions without which the jury's verdict might have been different." Aleman, 313 Ill. App. 3d at 67. Here, contrary to defendant's assertions, we do not believe the complained-of comments deprived defendant of a fair trial or constituted such factor that the jury would have reached a different verdict in the absence of those comments. Accordingly, we find no plain error.

Regarding the first and second complained-of comments, the evidence showed that defendant was selling drugs near a school when he was arrested. We find no error where it was a reasonable inference that he was there to make money off of selling drugs. See People v. Bell, 343 Ill. App. 3d 110, 115 (2003) ("[a] prosecutor may comment on the evidence and may draw all legitimate inferences from the evidence, even if unfavorable to the defendant").

16

No. 1-08-2609

Regarding the third complained-of comment, distinguishing the evidence in defendant's case from that found in the television program CSI, we also find no error. Rather, the CSI comment was a benign reference to the jurors' common knowledge that this was not an investigatory television mystery, but rather a real-world criminal case supported by overwhelming evidence of defendant's guilt. Moreover, this comment was clearly invited by defendant's closing argument and trial strategy. See Coleman, 201 Ill. App. 3d at 807 (remarks made during closing arguments must be examined in the context of those made by both the defense and the prosecution, and must always be based upon the evidence presented or reasonable inferences drawn therefrom). During his cross-examination of Cotelia Fulcher, who testified as an expert in the identification of heroin, defense counsel repeatedly questioned Fulcher as to why she did not obtain fingerprint evidence from the recovered heroin packets. Then, during closing arguments, defense counsel argued:

> "[DEFENSE COUNSEL]: Ms. Fulcher testified. She told you that in the facility where she works they can do fingerprint evidence. But she also told you that they won't do it unless the officers who recovered the evidence requested it. They didn't request that. You have to think new [*sic*]. How simple would it have been to fingerprint those bags. Then you wouldn't have to be guessing out there."

In response, the State argued in rebuttal:

> "[PROSECUTOR]: I'm sure you figured out by now this is

17

> not CSI. It is not TV. It really doesn't work that way. Certainly
>
> we are not as efficient as TV. But anyway this resembles CSI as
>
> much as [NASA] space travel resembles Star [Trek]."

The State's comment was clearly invited by and in response to defense counsel's questions at trial and comments in closing arguments, as well as based on the evidence adduced at trial.

While we do not find these complained-of comments improper, we note that, even if they were, improper arguments can be corrected by proper jury instructions, which carry more weight than the arguments of counsel. People v. Lawler, 142 Ill. 2d 548, 564 (1991); People v. Chapman, 262 Ill. App. 3d 439, 456 (1992). Moreover, any possible prejudicial impact is greatly diminished by the court's instructions that closing arguments are not evidence. See People v. Perry, 224 Ill. 2d 312, 348 (2007). Here, the court properly instructed the jury. Before closing arguments began, the trial court instructed the jury:

> "[THE COURT]: What the lawyers say during these closing
>
> arguments is not evidence, and should not be considered by you as
>
> evidence."

At the end of closing arguments, the trial court instructed the jury:

> "[THE COURT]: The law that applies in this case is stated
>
> in these instructions. * * * The State has the burden of proving the
>
> guilt of the defendant beyond a reasonable doubt, and this burden
>
> remains on the State throughout the case. The defendant is not
>
> required to prove his innocence."

We do not believe the complained-of comments were error. Moreover, even if they were error, the error was cured by the admonishments given by the trial court.

### III. Excessive Sentence

Next, defendant contends that his sentence is excessive. Defendant was sentenced, based on his criminal history, as a mandatory Class X offender. 730 ILCS 5/5-5-3 (West 2008). Defendant does not contest his mandatory Class X sentencing status, but argues that his eight-year sentence should be reduced to the minimum six-year sentence. Specifically, defendant argues that this court should reduce his sentence because of: (1) the nonviolent nature of the crime; (2) the fact that his prior criminal history was primarily drug-related; (3) the hardship his wife and children will endure, as he was the children's primary caregiver during summer months; (4) and his rehabilitative potential as evidenced by his drug addiction and subsequent rehabilitation once incarcerated. We disagree.

A trial court has broad discretion in determining an appropriate sentence. People v. Patterson, 217 Ill. 2d 407, 447-48 (2005). A reviewing court will reverse the trial court's sentencing determination only where the trial court has abused its discretion. Patterson, 217 Ill. 2d at 448. A sentence within the statutory range does not constitute an abuse of discretion unless it varies greatly from the purpose of the law or is manifestly disproportionate to the nature of the offense. People v. Henderson, 354 Ill. App. 3d 8, 19 (2004). The trial court may appropriately consider the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age when sentencing a defendant. People v. Fern, 189 Ill. 2d 48, 53

19

(1999). Where mitigating evidence is presented to the trial court, it is presumed, absent some indication other than the sentence itself to the contrary, that the court considered it. People v. Benford, 349 Ill. App. 3d 721, 735 (2004). When determining the propriety of a particular sentence, we cannot substitute our judgment for that of the trial court simply because we would weigh the sentencing factors differently. Fern, 189 Ill. 2d at 53.

The sentencing range for a Class X felony is 6 to 30 years' imprisonment. 730 ILCS 5/5-8-1 (West 2008). Defendant was sentenced to eight years' imprisonment.

At sentencing, the State argued in aggravation that defendant was a member of a street gang and has an extensive criminal history, including four convictions for possession of a controlled substance, as well as one for burglary. The State also argued that defendant has multiple children but does not pay child support. The State asked the court to sentence defendant for "significant penitentiary time."

In mitigation, defense counsel argued that defendant's criminal history includes mostly drug matters and that he was a drug addict who was seeking treatment. Defense counsel submitted two letters from the Chicagoland Prison Outreach stating that defendant had participated in the Life Skills Program and showing defendant's "willingness and his interest in changing his life and becoming a better person." Defense counsel noted for the court that defendant had five children and that this case involved only a small amount of drugs.

In sentencing defendant, the court stated it had taken into consideration the presentencing investigation report, as well as "all the factors in aggravation and mitigation," defendant's criminal history, and the arguments of counsel. Absent evidence to the contrary, we presume the

No. 1-08-2609

trial court considered the above mitigating evidence. See <u>Benford</u>, 349 Ill. App. 3d at 735.

Based on this record, which establishes that the trial court reviewed defendant's pre-sentence investigation report, considered appropriate mitigating and aggravating factors, and sentenced defendant to a term within the permissible sentencing range, we find that the trial court did not abuse its discretion.

IV.  Presentence Credit

Next, defendant contends and the State properly agrees that the mittimus should be modified to correctly reflect the appropriate number of days he served in presentencing custody.

There is a split in authority among the various districts of this court regarding whether a defendant should receive credit for the day he is sentenced.  Recently, however, the sixth division of this district held that a defendant is not entitled to presentence custody credit for the day on which he is remanded to the Department of Corrections.  <u>People v. Jones</u>, 397 Ill. App. 3d 651 (2009).  We agree.  The <u>Jones</u> court relied on <u>People v. Williams</u>, 394 Ill. App. 3d 480 (2009)[2], which held:  "[A] defendant is not entitled to credit for the day of sentencing if the mittimus is issued effective that same day."  <u>Williams</u>, 394 Ill. App. 3d at 483.

Here, the mittimus was issued on August 12, 2008, the same day that defendant was sentenced.  Accordingly, defendant is not entitled to credit for that day.  He is, however, entitled to credit for 376 days of presentence custody, as the record reflects that defendant was arrested

---

[2]At the time of this opinion, <u>People v. Williams</u>, 394 Ill. App. 3d 480 (2009), *appeal allowed*, 235 Ill. 2d 603 (2010), is pending before our supreme court.

21

on August 2, 2007, and sentenced on August 12, 2008. The mittimus incorrectly reflects a credit of 372 days. Pursuant to our authority under Supreme Court Rule 615(b)(1), we order the clerk of the circuit court to correct the mittimus to reflect a credit of 376 days of presentencing custody. 134 Ill. 2d R. 615(b)(1); People v. McCray, 273 Ill. App. 3d 396, 403 (1995).

## V. Fines and Fees

Next, defendant contends that his fees order must be amended because several of the fees assessed against him were improperly imposed. Specifically, he claims that the following fees assessed against him were improper: the DNA analysis fee (730 ILCS 5/5-4/3(j) (West 2008)); the $50 court system fee (55 ILCS 5/5-1101(c) (West 2008)); and the $5 court system fee (55 ILCS 5/5-1101(a) (West 2008)).

Defendant contends that the trial court improperly assessed the DNA analysis fee pursuant to section 5-4-3(j) of the Unified Code of Corrections (730 ILCS 5/5-4-3(j) (West 2008)). He argues that he should not be required to pay for DNA collection, analysis, or storage due to his prior felony convictions.[3] Specifically, he urges us to hold that, since he submitted DNA previously, requiring him to do so now is in contravention of the statute, which intends only a "single, one-time fee."

---

[3]Initially, defendant presented this argument without documentation. Upon submitting his reply brief, however, he also submitted a motion to supplement the record, which included the sentencing order from a prior conviction. We granted the motion. That sentencing order reflects that defendant was required to submit his DNA and was assessed a fee for doing so.

Defendant provided a DNA sample following an earlier conviction. "[T]he obvious purpose of the statute is to collect from a convicted defendant a DNA profile to be stored in a database. See 730 ILCS 5/5-4-3(e) (West 2006). Once a defendant has submitted a DNA sample, requiring additional samples would serve no purpose." People v. Evangelista, 393 Ill. App. 3d 395, 399 (2009). Accordingly, the $200 DNA analysis fee (730 ILCS 5/5-4-3(j) (West 2008)) must be vacated.

Next, defendant claims that the $50 court system fee that was imposed should be vacated because it is unauthorized pursuant to section 5-1101(b) of the Counties Code (55 ILCS 5/5-1101(b) (West 2008)). Defendant errs in this reasoning, however, because the $50 court system fee imposed in this case is authorized by section 5-110(c) of the same statute (55 ILCS 5/5-1101(c) (West 2008)). Specifically, that statute authorizes:

"(c) A fee to be paid by the defendant on a judgment of

guilty or a grant of supervision [under Section 5-9-1 of the Unified

Code of Corrections] as follows:

(1) for a felony, $50[.]"

Accordingly, the court system fee may be levied against a person for a judgment of guilt or grant of supervision. Defendant was convicted of delivery of a controlled substance, which is a felony. Therefore, the $50 fee is appropriate.

Finally, defendant claims, the State concedes, and we agree that the $5 court system fee (55 ILCS 5/5-1101(a) (West 2008)) must be vacated because his narcotics conviction is not related to the Illinois Vehicle Code or a similar municipal ordinance. See 55 ILCS 5/5-1101(a)

No. 1-08-2609

(West 2008); People v. Price, 375 Ill. App. 3d 684, 698 (2007).

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court and modify the mittimus.

Affirmed as modified.

TOOMIN, P.J., and HOWSE, J., concur.

No. 1-08-2609

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**
**(Front Sheet to be Attached to Each Case)**

| | |
|---|---|
| Please use the following form | PEOPLE OF THE STATE OF ILLINOIS,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>PRIEST WILLIS,<br><br>Defendant-Appellant. |
| Docket No.<br><br>COURT<br> Opinion<br> Filed | No. <u>1-08-2609</u><br><br>Appellate Court of Illinois<br>First District, <u>FIFTH</u> Division<br><br><u>May 21, 2010</u><br>(Give month, day and year) |
| JUSTICES | JUSTICE JAMES FITZGERALD SMITH DELIVERED THE OPINION OF THE COURT:<br>Toomin, P.J., and Howse, J.,  concur. |
| APPEAL from the Circuit Court of County; the Hon_____ Judge Presiding. | Lower Court and Trial Judge(s) in form indicated in margin:<br><br>Cook        Appeal from the Circuit Court of Cook County.<br><br>The Hon. <u>John P. Kirby,</u>  Judge presiding. |
| FOR APPELLANTS<br>John Doe, of Chicago<br><br>For APPELLEES,  : | Indicate if attorney represents APPELLANTS or APPELLEES and include attorney's of counsel.  Indicate the word or NONE if not represented.<br><br>APPELLANT: STATE APPELLATE DEFENDER, Chicago, IL., MICHAEL J. PELLETIER, State Appellate Defender; PATRICIA UNSINN, Deputy Defender, DEEPA PUNJABI, Assistant Appellate Defender. |
| Smith and Smith of Chicago, | APPELLEE (PETITIONER): STATE'S ATTORNEY, COUNTY OF COOK, Chicago, IL, ANITA ALVAREZ, State's Attorney; ALLAN J. SPELLBERG, MARY L. BOLAND, Assistant State's Attorneys |
| (Joseph Brown, of counsel)<br>Add attorneys for third-party appellants and/or appellees. | |