THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. IRVING HENDERSON, Defendant-Appellant.

First District (2nd Division)    No. 1—02—1016

Opinion filed November 16, 2004.

Michael J. Pelletier and Adrienne N. River, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, and William J. Dennison II, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GARCIA delivered the opinion of the court.

On June 5, 1995, the State charged the defendant, Irving Henderson, by indictment with 10 counts of attempted first degree murder of a police officer (720 ILCS 5/8—4, 9—1(b)(1) (West 1994)), 10 counts of attempted first degree murder (720 ILCS 5/8—4, 9—1(a)(1) (West 1994)), 10 counts of aggravated discharge of a firearm in the direction of a police officer (720 ILCS 5/24—1.2(a)(3) (West 1994)), 10 counts of aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(2) (West 1994)), and 14 counts of unlawful use of a weapon by a felon (UUW) (720 ILCS 5/24—1.1(a) (West 1994)). The State nol-prossed many of the charges. Following a bench trial, the trial court found the defendant guilty of four counts of both attempted first degree murder of a police officer and attempted first degree murder, four counts of both aggravated discharge of a firearm in the direction of a police officer and aggravated discharge of a firearm, and nine counts of UUW. The court originally sentenced the defendant to four 35-year prison terms for attempted first degree murder of a police officer and nine 5-year terms for UUW, to be served concurrently. The court later vacated the defendant's sentence because the supreme court held that the public act that defendant was sentenced under (Pub. Act 88—680, eff. January 1, 1995) violated the single-subject rule. See *People v. Cervantes*, 189 Ill. 2d 80, 98, 723 N.E.2d 265 (1999).

In November 2001, the court resentenced the defendant to four 35-year prison terms for attempted first degree murder of a police officer and a 5-year term for UUW, to be served concurrently. On appeal, defendant argues his sentence (1) violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), and (2) was excessive because the court failed to properly consider the proffered mitigating evidence and his potential for rehabilitation. We affirm.

## I. Background

On June 1, 1995, three Chicago police units responded to a dispatch about a domestic disturbance at 1426 S. Ridgeway in Chicago.

While the officers parked their vehicles, the defendant stood on the second-floor balcony of that building and screamed obscenities at the officers. The defendant then fired a revolver at the officers, specifically targeting Officer Larry Skol. The officers took cover and returned the defendant's fire.

Officers Thomas Doyle and Armando Silva then arrived at the scene. The defendant stopped shooting and went into his apartment. While the defendant was in his apartment, Officer Doyle ran toward the building. The defendant returned to his balcony brandishing a revolver and again fired at the officers, targeting Officers George Perez, Katherine Strocchia, and Skol. The officers continued to return the defendant's fire.

The defendant went into his apartment for a second time and returned to his balcony carrying a different weapon. He fired additional shots at the officers, this time targeting Officer Scott Ahren and hitting his squad car. Officer Doyle entered the building and kicked down the defendant's door. The defendant crawled over the balcony railing and either jumped or fell to the ground below. The officers then placed the defendant under arrest. The defendant had been shot in the leg.

Officer Doyle searched the defendant's apartment and found: (1) a 9-millimeter semiautomatic pistol with eight live rounds; (2) a .380-caliber semiautomatic pistol with one live round on the floor next to it and one expended shell casing; (3) a .38-caliber five-shot revolver with five expended casings in it; (4) a bag containing 9-millimeter rounds; and (5) a Lorcin .380-caliber semiautomatic handgun that was jammed.

At trial, the parties stipulated that urine samples collected from the defendant the morning of the incident at Mount Sinai Hospital tested positive for alcohol in the amount of .104, and for PCP, cocaine, and opiates. No quantitative analysis was done for the controlled substances. The parties also stipulated that two hours after the shooting, Detective Alan Jaglowski interviewed the defendant at the hospital. The defendant had no trouble communicating and answered all questions appropriately. He did have the smell of stale alcohol on his breath, but Detective Jaglowski did not perceive that the defendant was under the influence of alcohol or drugs.

The trial court found defendant guilty of four counts of both attempted first degree murder of a police officer and attempted first degree murder, four counts of both aggravated discharge of a firearm in the direction of a police officer and aggravated discharge of a firearm, and nine counts of UUW. The defendant filed a motion for a new trial and a judgment of acquittal. The court denied the motions and sentenced the defendant to four concurrent 35-year terms for at-

tempted first degree murder of a police officer and nine concurrent 5-year terms for UUW.

On December 26, 1996, the defendant filed a notice of appeal. On June 24, 1998, this court granted appellate counsel's motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967), and affirmed the defendant's conviction. See *People v. Henderson*, No. 1—97—0392 (1998) (unpublished order under Supreme Court Rule 23).

In April 2000, the defendant filed a *pro se* petition for postconviction relief that was supplemented by a petition from appointed counsel. The defendant asked the court to vacate his sentence because the Illinois Supreme Court held that Public Act 88—680 (Pub. Act 88—680, eff. January 1, 1995), the act under which he was sentenced, was unconstitutional because it violated the single-subject rule. See *Cervantes*, 189 Ill. 2d at 98. Under the act, the sentencing range for attempted first degree murder of a police officer was 20 to 80 years. Following *Cervantes*, it reverted to the 15- to 60-year range that was in effect prior to the amendment. The trial court vacated the defendant's sentence and ordered that the defendant be resentenced.

On November 20, 2001, the trial court resentenced the defendant. The court ordered a new presentencing investigation report (PSI report) and heard evidence in aggravation and mitigation. The court then sentenced the defendant to four concurrent 35-year prison terms for attempted first degree murder of a police officer and a concurrent 5-year term for UUW. The court detailed the factors that it considered in sentencing the defendant: (1) the facts of the case, including (a) the incident, (b) how it evolved, (c) the fact that none of the police officers were injured, and (d) the fact that "there was a danger not only to those police officers who were shot at but to others in the vicinity because of the shooting that was going on"; (2) the defendant's personal history, including (a) his age, (b) his likelihood for rehabilitation, and (c) his alcohol and substance abuse; (3) the defendant's criminal history; (4) the defendant's social history, including (a) the fact that he is the oldest of six children, (b) his childhood, (c) the fact that he was physically abused by his father at a very young age, (d) his current family life with his mother, his children, and other relatives, (e) his education background, and (f) his employment history; (5) the defendant's physical and mental health; (6) the defendant's extensive alcohol and drug history, including "the fact that he was addicted to narcotics, was addicted at an early age or started using alcohol at a very early age also, the fact that he has seeked [*sic*], although unsuccessfully, treatment for this"; (7) the defendant's former gang affiliation; and (8) the defendant's service in the Army Reserves.

"Taking this all in consideration, as I indicated, the [c]ourt's prepared to impose sentence. Imposing sentence—and I may have mentioned these factors before, but I will do so again—I am certainly considering the facts of this case, the danger that this [d]efendant could—had to other individuals, the possible—great bodily harm that could have occurred to other individuals. I'm also taking in consideration his extensive criminal history. I'm also taking in consideration any sentence I impose here today must be one to deter not only [d]efendant but others from similar acts. I'm also taking in consideration the mitigation I've heard here today, the fact that this [d]efendant was in the midst of a domestic altercation when the incident occurred, the fact that he was addicted to both drugs and alcohol—probably on them at the time, according to what I've heard in court. The fact that prior to becoming an adult there was no juvenile history, but I'm also taking in consideration acts that have occurred in the penitentiary. And I am certainly taking in consideration [d]efendant's own statement.

Taking this all in consideration, I will impose the following sentences: On the four counts of attempted first-degree murder of a police officer, I will impose sentence of 35 years in the Illinois Department of Corrections, the same sentence I imposed previously because I believe that it was the proper sentence at that time and I believe it is the proper sentence at this time. Whether the fact that the sentencing range had changed does not change the fact that that was the proper sentence, and this hopefully is the proper sentence.

I will impose a concurrent sentence, as I did before, of 5 years in the Illinois Department of Corrections of the charge of unlawful use of a weapon by a felon. Defendant will, of course, get credit for whatever time he has served to date."

The court denied the defendant's motion to reconsider sentence and this appeal followed.

## II. Analysis

On appeal, the defendant argues that his sentence violates the proportionate penalties clause of the Illinois Constitution. He also argues that his 35-year sentence was excessive and contends that the trial court did not properly weigh the mitigating factors and his potential for rehabilitation.

### A. Claim of Proportionate Penalties Violation

The defendant argues that section 8—4(c)(1) of the Criminal Code of 1961 (Code) (720 ILCS 5/8—4(c)(1) (West 1992)) provides an unconstitutionally disproportionate sentencing range for attempted first degree murder of a police officer when compared to the sentenc-

ing range for the similar, but more serious, offense of second degree murder.[1] Initially, we note the defendant raises this issue for the first time on appeal. However, because a challenge to the constitutionality of a statute can generally be raised at any time, we will consider the defendant's argument. See *People v. Roberts*, 331 Ill. App. 3d 15, 18, 772 N.E.2d 282 (2002).

Statutes are afforded a strong presumption of constitutionality, and whenever reasonably possible, we will construe a statute in a manner that upholds its validity. *People v. Graves*, 207 Ill. 2d 478, 482, 800 N.E.2d 790 (2003). The party challenging a statute's constitutionality bears the burden of demonstrating its invalidity. Whether a statute is constitutional is a matter of law that we review *de novo*. *Graves*, 207 Ill. 2d at 482.

■ The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A statute will be found to violate the proportionate penalties clause if either: (1) the penalty is "cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community"; (2) similar offense are compared and the offense creating the less serious threat to the public health and safety is punished more severely; or (3) offenses with identical elements are punished differently. *Graves*, 207 Ill. 2d at 482. In this case, the

---

[1]The posture of this case presents a real question of whether the defendant has standing to challenge the sentencing statute. See *People v. Lopez*, 166 Ill. 2d 441, 459-60, 655 N.E.2d 864 (1995) (McMorrow, J., concurring in part and dissenting in part, joined by Bilandic, C.J.). The defendant was convicted of attempted first degree murder of a police officer. At his trial and in his first appeal on the merits, the defendant did not present evidence that he was acting under serious provocation or an imperfect self-defense, the two second-degree-murder mitigating factors.

In this appeal, the defendant contends that a person who attempted to kill a police officer but failed to do so would be subject to a penalty of 15 to 60 years, while a person who actually killed an officer and was found guilty of second degree murder because of the presence of a statutory mitigating factor would be subject to a sentencing range of only 4 to 20 years. However, the defendant does not claim and the record does not support an argument that this defendant acted under serious provocation or an imperfect self-defense. The defendant instead challenges the statute based on the hypothetical presence of the mitigating factors. Ordinarily, a defendant does not have standing to challenge a statute as it might be applied to others in different circumstances. *People v. Hill*, 199 Ill. 2d 440, 445, 771 N.E.2d 374 (2002). Because neither party has raised this issue, we will consider the defendant's argument.

defendant challenges his sentence under the second comparative proportionality test.

■ Under this test, we apply a two-step analysis. We first consider whether the offenses being compared share " 'common statutory purposes.' " *People v. Moss*, 206 Ill. 2d 503, 522, 795 N.E.2d 208 (2003), quoting *People v. Lombardi*, 184 Ill. 2d 462, 476, 705 N.E.2d 91 (1998). If the statutes do not share a common statutory purpose, comparative proportionality review is not appropriate because we presume the legislature considered different factors in establishing the different sentences. *Moss*, 206 Ill. 2d at 523. If, however, the purposes are related, we move to the second step and consider whether the less serious offense is punished more severely than the more serious offense. *Moss*, 206 Ill. 2d at 522. The seriousness of an offense is determined by considering the degree of harm, the frequency of the crime, and the high risk of bodily harm associated with the crime. *Moss*, 206 Ill. 2d at 529.

■ The defendant contends that the enhanced sentencing range of 15 to 60 years for attempted first degree murder of a police officer (720 ILCS 5/8—4(c)(1) (West 1992)) is unconstitutionally disproportionate to the sentencing range of 4 to 20 years for second degree murder. Section 8—4(c)(1) provided:

> "A person convicted of an attempt may be fined or imprisoned or both not to exceed the maximum provided for the offense attempted but, except for an attempt to commit the offense defined in Section 33A—2 of the Act,
>
> (1) the sentence for attempt to commit first degree murder is the sentence for a Class X felony, except that an attempt to commit first degree murder when at least one of the aggravating factors specified in paragraphs (1), (2) and (12) of subsection (b) of Section 9—1 is present is a Class X felony for which the sentence shall be a term of imprisonment of not less than 15 years and not more than 60 years[.]" 720 ILCS 5/8—4(c)(1) (West 1992).

The applicable aggravating factor in the defendant's case was that the victim was a peace officer in the course of performing his official duties and that the defendant knew or should have known that the victim was a peace officer. 720 ILCS 5/9—1(b)(1) (West 1994).

Second degree murder, on the other hand, is a Class 1 felony punishable by a prison term of not less than 4 years and not more than 20 years (730 ILCS 5/5—8—1(a)(1.5) (West 1994)).

Under the first prong of the comparative proportionality test, the defendant argues that attempted first degree murder of a police officer and second degree murder share a related statutory purpose, namely, "to deter people from unlawfully killing." Although we may agree that

the general goal of these statutes is to deter people from unlawfully killing, a statute that punishes more severely those persons who murder, or attempt to murder, a peace officer in the line of duty serves a more specific purpose. See *People v. Hill*, 199 Ill. 2d 440, 458, 771 N.E.2d 374 (2002).

The *Hill* court considered whether the mandatory "15/20/25-to-life" add-on sentences as applied to the home invasion statute were constitutional under the proportionate penalties clause. The defendant was charged with home invasion while armed with a firearm (720 ILCS 5/12—11(a)(3) (West Supp. 1999)). *Hill*, 199 Ill. 2d at 442. He argued that the sentence imposed under section 12—11(a)(3) was unconstitutionally disproportionate to the sentences imposed under sections 12—11(a)(1) (720 ILCS 5/12—11(a)(1) (West Supp. 1999)), *i.e.*, home invasion while armed with a dangerous weapon other than a firearm, and 12—11(a)(2) (720 ILCS 5/12—11(a)(2) (West Supp. 1999)), *i.e.*, home invasion and causing injury. *Hill*, 199 Ill. 2d at 453-54. Sections 12—11(a)(1) and (a)(2) were Class X felonies punishable by a prison term of 6 to 30 years. Section 12—11(a)(3) was also a Class X felony punishable by a prison term of 6 to 30 years plus an additional 15 years if the offender threatened the use of force. *Hill*, 199 Ill. 2d at 456-57.

The defendant argued that section 12—11(a)(3) was the less serious offense, but it was punished more severely than the more serious offenses, sections 12—11(a)(1) and (a)(2). Under the comparative proportionality test, the *Hill* court refused to compare the statutes because it found that the statutes served distinct statutory purposes. *Hill*, 199 Ill. 2d at 459. The court recognized that the general purpose of the home invasion statute was to protect the safety of persons while in their homes. *Hill*, 199 Ill. 2d at 455. However, the court determined that when the legislature amended the home invasion statute to include three classifications that related to home invasion with a firearm, it intended to break the offense of home invasion into two distinct categories: (1) those committed with firearms and (2) those committed without firearms. *Hill*, 199 Ill. 2d at 457. The court explained that "[w]hile one might properly conclude that the general purpose of the statute as a whole has not changed, we nevertheless find that the new firearms provisions serve a second, more specific purpose and target a unique type of danger." *Hill*, 199 Ill. 2d at 458; see also *People v. Moore*, 343 Ill. App. 3d 331, 346, 797 N.E.2d 217 (2003) (where the defendant sought to compare the sentences for first degree murder with a firearm and first degree murder without a firearm, "[c]omparative proportionality review is inappropriate here because the new firearms provisions of the first-degree murder

sentencing statute serve a second, more specific purpose and target a unique type of danger that is absent when the offender does not possess a firearm"); *People v. Zapata*, 347 Ill. App. 3d 956, 971, 808 N.E.2d 1064 (2004) (following *Hill* and *Moore* and explaining "the threshold issue is whether deterring the carrying or use of a firearm during a murder is a purpose more specific and distinct from that of the general murder statute").

Here, the defendant argues that this case is similar to *People v. Morgan*, 203 Ill. 2d 470, 472-73, 786 N.E.2d 994 (2003), where the supreme court held that Public Act 91—404 (Act) (Pub. Act 91—404, § 5, eff. January 1, 2000), which amended the sentencing provision of the offense of attempted first degree murder to include the additional "15/20/25-to-life" enhancements, violated the proportionate penalties clause. The court compared the penalties under the Act with the penalties imposed for second degree murder.

Initially, the *Morgan* court reiterated that attempted second degree murder does not exist under the laws of Illinois. *Morgan*, 203 Ill. 2d at 478. Therefore, "the mandatory enhanced sentencing ranges created by the Act [were] applicable without regard to whether defendant acted under extreme provocation or while possessing an unreasonable belief that his actions were necessary for his defense," the two mitigating factors that distinguish first degree murder from second degree murder. *Morgan*, 203 Ill. 2d at 481. The court then determined, in those cases where the second-degree-murder-mitigating factors were not present, it would not necessarily be "cruel, degrading or so wholly disproportionate to the offense committed to subject a defendant who commits the offense of attempted first degree murder to mandatory add-on sentences of 15 years, 20 years or 25 years to life, depending on whether a firearm is present, discharged or the cause of bodily injury." *Morgan*, 203 Ill. 2d at 488.

The court also explained that where the mitigating factors were present and a firearm was *not* involved in the attempt, "the penalty for attempted first degree murder is not so disparate that the statute is rendered unconstitutional by the defendant's inability to prove the existence of mitigating circumstances." *Morgan*, 203 Ill. 2d at 489. However, if the mitigating factors were present *and* a firearm was involved, the court found that the penalty ranges for attempted first degree murder far exceeded the range for second degree murder. *Morgan*, 203 Ill. 2d at 489. The court explained:

> "Under the amended statute, then, a defendant whose actions would have resulted in a conviction for second degree murder if the victim died, must be convicted of attempted first degree murder if the victim lives. In addition, when a gun is used in the commission

of the offense, the defendant will be subject to the mandatory enhanced sentencing scheme. As a result, based on the statute as it is now written, where mitigating circumstances exist the penalty for an *attempt* to commit murder involving the use of a firearm will *always* be greater than the penalty for the underlying offense committed, *i.e.*, second degree murder." (Emphasis in original). *Morgan*, 203 Ill. 2d at 490.

The *Morgan* court held that in that situation, the attempt statute was unconstitutional because if the victim lived, the defendant's minimum sentence would have been one year more than the maximum sentence he could have received if the victim had died. *Morgan*, 203 Ill. 2d at 491; see also *Moss*, 206 Ill. 2d at 525-26 (armed robbery with a firearm and aggravated battery with a firearm had a common statutory purpose and could be compared for proportionality clause purposes).

■ We distinguish this case from *Morgan*. Although the general purposes of the statutes at issue in this case are similar, under *Hill* we must determine whether the statute that punishes more severely has a second, more specific purpose that targets a unique type of danger, so that the purposes of the offenses are distinct. *Hill*, 199 Ill. 2d at 458. The statutory enhancement for attempted first degree murder of a police officer serves a specific purpose that the second degree murder statute does not; it seeks to both deter the intentional killing of police officers and to protect police officers who are performing their official duties. We therefore determine that comparative proportionality review is not appropriate in this case. See *Hill*, 199 Ill. 2d at 459.

In addition, we do not believe that the sentencing range for attempted first degree murder of a police officer is "cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community." *People v. Lopez*, 166 Ill. 2d 441, 450-51, 655 N.E.2d 864 (1995) (finding that the penalty for attempted first degree murder does not violate the proportionality clause). The legislature has the power to set the nature and extent of criminal penalties. *Morgan*, 203 Ill. 2d at 488. Police officers play a vital role in our society. The demands of their position regularly place officers in potentially violent and dangerous situations. The need to protect these officers and to punish more severely those who interfere with their duties is a determination that the legislature is in a better position than this court to make. We therefore affirm the defendant's sentence.

## B. Claim of Excessive Sentence

■ The defendant next argues that his 35-year sentence was excessive and contends that the trial court did not properly weigh the mitigating factors and his potential for rehabilitation.

A trial court's sentencing decision is entitled to great deference. *People v. Stacey*, 193 Ill. 2d 203, 209, 737 N.E.2d 626 (2000). In determining the appropriate sentence, the trial court must balance the relevant factors, such as the defendant's "credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Stacey*, 193 Ill. 2d at 209. Absent an abuse of discretion, this court will not substitute its judgment for that of the trial court, and we will not alter a defendant's sentence on review. *Stacey*, 193 Ill. 2d at 209-10. "An abuse of discretion will be found only if the judgment of the trial court is manifestly unjust or palpably erroneous" or the defendant's sentence clearly constitutes a departure from fundamental law or is not proportioned to the nature of the offense. *People v. Anderson*, 112 Ill. 2d 39, 46, 490 N.E.2d 1263 (1986).

In mitigation, the defendant presented evidence (1) he was acting under the strong provocation of a domestic dispute; (2) he was under the influence of drugs and alcohol at the time of the offenses; (3) no one was injured in the commission of the offense; (4) he was remorseful; (5) he had led a law-abiding life for five years prior to the offenses; (6) he suffered physical abuse as a child; (7) he was honorably discharged from the Army Reserves; and (8) he had taken classes while imprisoned.

In aggravation, the State asked the court to consider (1) the defendant's actions threatened serious harm; (2) the defendant had an extensive criminal history, including convictions for UUW and delivery of a controlled substance; (3) in the defendant's initial PSI report, the defendant reported that he was a gang member and supported himself by dealing drugs; and (4) the defendant's acts of violence while in the penitentiary, *i.e.*, the defendant was found guilty of fighting with an inmate, striking a correctional officer, and assaulting and fighting with an inmate.

In sentencing the defendant, the trial court extensively outlined all of the evidence presented in aggravation and mitigation. The record indicates that the court carefully and thoughtfully considered all of this evidence and balanced the relevant factors. In light of the seriousness of the defendant's crimes, the defendant's sentences are neither manifestly unjust nor palpably erroneous and do not constitute a clear departure from fundamental law. We find that the trial court did not abuse its discretion and affirm the defendant's sentence.

20

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

BURKE, P.J., and WOLFSON, J., concur.