FIFTH DIVISION
May 13, 2011

No. 1-08-2609

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No.07CR17542 |
| | ) | |
| PRIEST WILLIS, | ) | The Honorable |
| | ) | John P. Kirby, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.

Justice Joseph Gordon concurred in the judgment and opinion.

Justice Howse concurred in part and dissented in part.

**OPINION**

After a jury trial, defendant Priest Willis was convicted of delivery of less than one gram of heroin within 1,000 feet of a school. The trial court sentenced defendant, based on prior criminal history, as a Class X offender to eight years' imprisonment. On appeal, defendant does not contest the sufficiency of the evidence to sustain his conviction, but contends that: (1) the trial court's failure to strictly comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007), requires reversal and remand for a new trial; (2) he was prejudiced by the State's allegedly improper comments during closing arguments; and (3) his sentence is excessive in light of the nonviolent nature of the crime and the existence of mitigating factors. Defendant also contends, and the State properly agrees, that he was entitled to an additional four days of credit for time

served and he is entitled to a reduction in the total amount of fees assessed against him.

On May 21, 2010, this court affirmed defendant's conviction and sentence and modified the mittimus. *People v. Willis*, 402 Ill. App. 3d 47 (2010). On January 26, 2011, the Illinois Supreme Court denied Willis leave to appeal, but entered a supervisory order directing this court to vacate its judgment and reconsider the appeal in light of *People v. Thompson*, 238 Ill. 2d 598 (2010). *People v. Willis*, 239 Ill. 2d 587 (2011) (table). Accordingly, we vacate our prior judgment and reconsider Willis's appeal. For the following reasons, we again affirm Willis's conviction and sentence and modify the mittimus.

## BACKGROUND

Defendant's conviction arose from a drug transaction which occurred less than 300 feet from an elementary school on August 2, 2007, and was witnessed by various narcotics task force officers of the Chicago police department. The task force was composed of Officers Evangelides, Lopez, Srisuth, Flores, Dobek, Pentimone, Rivera, and Padar. Officer Evangelides served as the undercover buy officer and purchased drugs from two dealers that morning. The first dealer was a man named Keith Adams, who was 6 feet tall and 210 pounds, and the second was defendant, who was 5 feet 8 inches tall and 180 pounds.

Officer Evangelides testified that he saw defendant standing at 4936 West Maypole. Defendant asked Officer Evangelides if he was looking for "blows," which is the street term for heroin. Officer Evangelides exchanged a prerecorded $20 bill for two plastic baggies with black scorpion logos on them. The substance inside was later determined to be heroin. After the

purchase, Officer Evangelides walked two blocks to his undercover vehicle from which he radioed the rest of his team to inform them of the purchase.

Officer Rivera testified that he detained defendant while Officer Pentimone detained Adams. Officer Evangelides identified both men. Officer Rivera recovered $70 from defendant, including the prerecorded $20 bill. Police searched the area and found a rock across the street with bags containing what was later determined to be heroin beneath it.

The State rested, and the defense presented evidence by way of defendant's testimony. Defendant testified that he fixed friends' and neighbors' cars for a living and was paid in cash for doing so. He testified that, on August 1, 2007, he put new brakes on Adams' car. Adams instructed defendant to meet him the following day to collect the $20 he was owed. On August 2, 2007, defendant met Adams at 4936 West Maypole Street, and Adams paid defendant with a single $20 bill. Then, defendant and Adams stood on the sidewalk for about 15 minutes, discussing the condition of Adams' car. During that time, nobody else approached Adams, and defendant testified that Adams was not selling drugs. Defendant denied knowing of any drug sales in the area. Soon, the police arrived. Defendant and Adams were arrested. Defendant denied he had been selling drugs.

Defense rested. On this evidence, the jury found defendant guilty. Defendant appeals.

## ANALYSIS

### I. Rule 431(b)

On appeal, defendant first contends that he was denied his right to a fair and impartial jury

because the trial judge failed to question the prospective jurors regarding the four principles enumerated in *People v. Zehr*, 103 Ill. 2d 472 (1984), and codified in Rule 431(b). Under that rule, the trial court must ask jurors whether they understand and accept that: (1) defendant is presumed innocent of the charges against him; (2) the State must prove defendant guilty beyond a reasonable doubt; (3) defendant is not required to present evidence on his behalf; and (4) defendant has the right not to testify and his failure to do so cannot be held against him. Ill. S. Ct. R. 431(b) (eff. May 1, 2007). Specifically, defendant argues that he was prejudiced where the trial court failed to admonish the potential venire regarding defendant's right not to testify. Defendant also argues that he was prejudiced where the trial court gave only 20 of the 32 prospective jurors that were admonished as to the remaining *Zehr* principles an opportunity to respond to whether or not they understood and accepted the principle regarding defendant's right not to present evidence. Defendant maintains that the trial court's error requires automatic reversal. The State does not dispute that the trial court failed to strictly comply with Rule 431(b), but responds that the court's substantial compliance with the rule does not warrant automatic reversal.

This issue is controlled by our supreme court's decision in *People v. Thompson*, 238 Ill. 2d 598 (2010). We begin by noting that defendant forfeited review of this issue by failing to object to it at trial or raise it in a timely filed posttrial motion. *Thompson*, 238 Ill. 2d at 611-12 (failure to properly preserve an alleged error by both an objection at trial and a written posttrial motion constitutes a procedural default of that error on review (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988))). Defendant admits that he failed to properly preserve this issue for appeal,

but urges us to review the error under both the first prong of the plain error exception because the evidence was closely balanced, as well as the second prong of the plain error exception because the error itself was so serious that he was denied a substantial right and thus a fair trial, requiring automatic reversal. Ill. S. Ct. R. 615; *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005) (plain error rule permits consideration of errors even though technically waived for review where the evidence is closely balanced or where the claimed error is of such magnitude that there is a substantial risk that the defendant was denied a fair and impartial trial).

We first examine whether the trial court complied with Rule 431(b) to determine whether there was error here. *Thompson*, 238 Ill. 2d at 613. In *Zehr*, 103 Ill. 2d at 477, our supreme court held that a trial court erred during *voir dire* where it refused defense counsel's request to ask questions regarding the State's burden of proof, defendant's right not to testify, and the presumption of innocence. Specifically, the court held:

> "We are of the opinion that essential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him. If a juror has a prejudice against any of these basic guarantees, an instruction given at the end of trial will have little curative effect." *Zehr*, 103 Ill. 2d at 477.

In 1997, our supreme court amended Rule 431(b) to ensure compliance with the *Zehr*

requirements. Ill. S. Ct. R. 431, Committee Comments (eff. May 1, 1997). Under that amendment, the court was required, if requested by the defendant, to ask the potential jurors, individually or as a group, whether they understand the *Zehr* principles. Ill. S. Ct. R. 431(b) (eff. May 1, 1997). Effective May 1, 2007, our supreme court again amended Rule 431(b), omitting the language "[i]f requested by the defendant," and leaving the remainder of the rule unchanged. Rule 431(b) now provides, *inter alia*:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.
>
> The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

This rule, which was in effect at the time of defendant's trial, imposes a *sua sponte* duty

No. 1-08-2609

on the trial court to question potential jurors as to whether they understand and accept the enumerated principles integral to a fair trial. *People v. Yarbor*, 383 Ill. App. 3d 676, 683 (2008). A trial court's compliance with supreme court rules is reviewed *de novo*. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002).

The record shows that as *voir dire* began in this case on July 7, 2008, the potential venire was brought into the courtroom and seated. The clerk called the first 20 names to be seated in the courtroom, and those 20 potential jurors were reseated in the jury box. Then, the court addressed the entire potential venire as a group, stating:

"THE COURT: I'm going to ask you at this point two propositions of law. Do each of you understand that under the law a defendant is presumed to be innocent of the charges against him, this presumption remains with him throughout every stage of the proceedings and is not overcome unless from all of the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty? Do each of you in the jury room in the jury box and the chairs in front understand that principle of law; if so, please raise your right hand. All of the jurors have raised their right hand. And will each of you follow that principle of law; if so, please raise your right hand. Let the record reflect all of the jurors have raised their right hand."

The court continued:

7

"THE COURT: Do you also understand that the State has the burden of proving defendant guilty beyond a reasonable doubt and this burden remains on the State throughout the case, the defendant is not required to prove his innocence nor is he required to present any evidence in his own behalf, he may rely upon the presumption of innocence. Do each of you both understand that principle of law and will you follow that principle of law; if so, please raise your right hand. Let the record reflect twenty of the potential jurors have raised their hand."

Accordingly, all of the potential jurors were present in the courtroom when the court admonished them of the *Zehr* principles regarding the presumption of innocence and the State's burden of proof. All of the potential jurors were questioned and responded that they understood and accepted these principles. However, only the first panel of 20 jurors who were seated in the jury box responded to the court's questioning regarding defendant's right not to present evidence.

Ultimately, 8 jurors were chosen from the original panel of 20, while 4 jurors and 2 alternate jurors were chosen from a second panel. The second panel was not re-admonished regarding the *Zehr* principles. The court did not admonish any of the potential jurors that defendant's failure to testify could not be held against him, nor ask whether they understood and accepted that principle.

Trial proceeded. Defendant testified on his own behalf. Following closing arguments by both parties, the court advised the jurors:

"THE COURT: The defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in this case you are convinced beyond a reasonable doubt that he is guilty. The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The Defendant is not required to prove his innocence."

The record thus convinces us that the trial court failed to comply with Rule 431(b) as to two of the four *Zehr* principles: it questioned only the first jury panel as to whether they understood and accepted the principle that defendant is not required to present evidence on his own behalf, and it failed to question any of the jurors as to whether they understood or accepted the principle that defendant's failure to testify could not be held against him, and whether his failure to do so would affect their ability to be fair and impartial. We therefore find error, as the *voir dire* was incomplete.

## II. Plain Error

Having concluded that the trial court erred, we address the issue of whether the error falls into either category of plain error. *Thompson*, 238 Ill. 2d at 613 (the first prong of the plain error doctrine operates when " 'a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant,

9

regardless of the seriousness of the error;' " the second prong operates when " 'a clear or obvious error occurred and that error is so serious that it affected the * * * integrity of the judicial process, regardless of the closeness of the evidence' "(quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007))). Under both prongs of the plain error doctrine, the burden of persuasion rests with the defendant. *Piatkowski*, 225 Ill. 2d at 565. If that burden is not met, defendant's conviction will stand. *Herron*, 215 Ill. 2d at 181-82.

### a. Plain Error, First Prong

We first consider whether the first prong has been satisfied. In doing so, we must consider whether the outcome of defendant's trial may have been affected by the trial court's failure to ask potential jurors if they accepted and understood that defendant had the right not to testify, and by the trial court's failure to ask some of the potential jurors if they accepted and understood that defendant was not required to offer evidence on his own behalf. The defendant must establish that the error alone could have led to his conviction. *Herron*, 215 Ill. 2d at 186-87.

Defendant has not met this burden. The evidence here was not closely balanced, where multiple narcotics task force police officers testified that defendant sold drugs and $20 of pre-recorded funds were found in defendant's possession upon his arrest. Specifically, Officer Evangelides testified that he was the designated "buy" officer, who was responsible for purchasing street drugs with prerecorded bills. Officer Evangelides testified that, as he approached defendant on the street on the day in question, defendant asked him if he was "looking for blows," a street term for heroin. Officer Evangelides said yes and purchased two baggies containing tinfoil packets of suspected heroin for $20. He paid for these drugs with the prerecorded bills. Officer

10

Evangelides identified defendant in open court as the person who sold him drugs. Officer Rivera testified that he was part of the narcotics unit involved in the controlled drug purchase on the day in question, and he recovered the $20 prerecorded bill from defendant's front pocket. Officer Srisuth testified that he observed Officer Evangelides talk with defendant and then saw defendant hand a small item to Officer Evangelides in exchange for money. Defendant testified that he did not sell drugs to Officer Evangelides and did not, in fact, talk with anybody other than Adams before his arrest. He testified that Adams paid him $20 for work he had performed on his car the previous day, and he denied having sold drugs as well as knowing of drug sales in the area. The evidence here was not closely balanced and, accordingly, does not rise to the level of a first-prong plain error exception.

### b. Plain Error, Second Prong

We now consider whether the second prong under the plain error analysis has been satisfied. Defendant contends that the trial court's violation of Rule 431(b) is automatic reversible error because it infringed upon his right to an impartial jury, thereby affecting the fairness of his trial and the integrity of the judicial process. However, a Rule 431(b) violation is not a structural error requiring automatic reversal. *Thompson*, 238 Ill. 2d at 610-11 ("While trial before a biased jury is structural error subject to automatic reversal, failure to comply with Rule 431(b) does not necessarily result in a biased jury. Rule 431(b) questioning is simply one way of helping to ensure a fair and impartial jury."). Absent evidence of a biased jury, a violation of Rule 431(b) is not reversible under the second prong of plain error review:

> "[t]he failure to conduct Rule 431(b) questioning does not

necessarily result in a biased jury, regardless of whether that questioning is mandatory or permissive under our rule. Although the amendment to the rule serves to promote the selection of an impartial jury by making questioning mandatory, Rule 431(b) questioning is only one method of helping to ensure the selection of an impartial jury. See *Glasper*, 234 Ill. 2d at 195-96. It is not the only means of achieving that objective. A violation of Rule 431(b) does not implicate a fundamental right or constitutional protection, but only involves a violation of this court's rules. *Glasper*, 234 Ill. 2da t 193. Despite our amendment to the rule, we cannot conclude that Rule 431(b) questioning is indispensable to the selection of an impartial jury." *Thompson*, 238 Ill. 2d at 614-15.

In this case, we find no second-prong plain error where defendant fails to identify any evidence that the trial court's error resulted in his being tried before a biased jury. Rather, defendant, who testified on his own behalf at trial, argues only that he was somehow prejudiced when the court, in contravention of Rule 431(b), failed to admonish the jury that his failure to present evidence on his own behalf could not be held against him.

Although under the plain error rule, defendant may bypass normal forfeiture principles, he has failed to show the evidence is so closely balanced that the error threatens to tip the scales of justice against him or the error has affected the fairness of his trial and challenged the integrity of the judicial process. See *Thompson*, 238 Ill. 2d at 613-14. We conclude, again, that the plain

12

error doctrine does not provide a basis for relaxing defendant's forfeiture of this issue.

### III. Closing Arguments

Next, defendant contends that he was denied his right to a fair trial based on prosecutorial error during closing arguments. Specifically, defendant argues that he was prejudiced when the prosecution made the following statements during closing arguments:

> "[PROSECUTOR]: When this man goes to work each day he doesn't go to an office building like most people do. * * * This Defendant sets up shop next to Spencer Elementary School. And there he goes to do his work by selling drugs."

And:

> "[PROSECUTOR]: The Defendant is a drug dealer and he deals drugs next to a school. Put him out of business and find him guilty."

And, in rebuttal, the State responded to defendant's arguments regarding a lack of fingerprint evidence:

> "[PROSECUTOR]: I'm sure you figured out by now this is not CSI. It is not TV. It really doesn't work that way. Certainly we are not as efficient as TV. But anyway, this resembles CSI as much as [NASA] space travel resembles Star [Trek]."

Defendant argues that the first and second complained-of comments prejudiced defendant, "as

they suggested past illegal conduct and plans of future illegal conduct that were never introduced into evidence." He argues that the third complained-of comment was an attempt to downplay "the lack of physical evidence against [defendant] by discrediting techniques commonly viewed on the popular television program CSI," which "lowered the jury's expectation of the amount of evidence needed to convict [defendant], thereby lessening their own burden of proof."

Initially, we note that defendant has forfeited this issue by failing to object at trial and failing to include it in his posttrial motion. *Enoch*, 122 Ill. 2d at 186 (failure to properly preserve an alleged error by both an objection at trial and a written posttrial motion constitutes a procedural default of that error on review). Defendant admits that he failed to properly preserve this issue for appeal, but urges us to consider it as plain error on the bases that substantial rights are involved and that the evidence was closely balanced. Ill. S. Ct. R. 615; *Herron*, 215 Ill. 2d at 186-87 (plain error rule permits consideration of errors even though technically waived for review where the evidence is closely balanced or where the claimed error is of such magnitude that there is a substantial risk that the defendant was denied a fair and impartial trial). We first consider whether any error occurred at all. *People v. Durr*, 215 Ill. 2d 283, 299 (2005).

A prosecutor is allowed wide latitude during closing arguments. *People v. Nieves*, 193 Ill. 2d 513, 532-33 (2000). A prosecutor may comment on the evidence presented at trial, as well as any fair, reasonable inferences therefrom, even if such inferences reflect negatively on the defendant. *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005). Remarks made during closing arguments must be examined in the context of those made by both the defense and the prosecution, and must always be based upon the evidence presented or reasonable inferences

14

drawn therefrom. *People v. Coleman*, 201 Ill. App. 3d 803, 807 (1990). The character and scope of closing argument are left largely to the discretion of the trial court, and we will not disturb its decision absent an abuse of that discretion. See *People v. Aleman*, 313 Ill. App. 3d 51, 66-67 (2000). We will only reverse a conviction on the ground of improper argument if the challenged comments constituted a material factor in the conviction, without which the jury might have reached a different verdict. See *Aleman*, 313 Ill. App. 3d at 66-67. "The dispositive question in the case at bar, therefore, is whether the prosecutor's argument resulted in substantial prejudice to defendant, and constituted a material factor in his convictions without which the jury's verdict might have been different." *Aleman*, 313 Ill. App. 3d at 67. Here, contrary to defendant's assertions, we do not believe the complained-of comments deprived defendant of a fair trial or constituted such factor that the jury would have reached a different verdict in the absence of those comments. Accordingly, we find no plain error.

Regarding the first and second complained-of comments, the evidence showed that defendant was selling drugs near a school when he was arrested. We find no error where it was a reasonable inference that he was there to make money off of selling drugs. See *People v. Bell,* 343 Ill. App. 3d 110, 115 (2003) ("[a] prosecutor may comment on the evidence and may draw all legitimate inferences from the evidence, even if unfavorable to the defendant").

Regarding the third complained-of comment, distinguishing the evidence in defendant's case from that found in the television program CSI, we also find no error. Rather, the CSI comment was a benign reference to the jurors' common knowledge that this was not an investigatory television mystery, but rather a real-world criminal case supported by overwhelming

evidence of defendant's guilt. Moreover, this comment was clearly invited by defendant's closing argument and trial strategy. See *Coleman*, 201 Ill. App. 3d at 807 (remarks made during closing arguments must be examined in the context of those made by both the defense and the prosecution, and must always be based upon the evidence presented or reasonable inferences drawn therefrom). During his cross-examination of Cotelia Fulcher, who testified as an expert in the identification of heroin, defense counsel repeatedly questioned Fulcher as to why she did not obtain fingerprint evidence from the recovered heroin packets. Then, during closing arguments, defense counsel argued:

> "[DEFENSE COUNSEL]: Ms. Fulcher testified. She told you that in the facility where she works they can do fingerprint evidence. But she also told you that they won't do it unless the officers who recovered the evidence requested it. They didn't request that. You have to think new [*sic*]. How simple would it have been to fingerprint those bags. Then you wouldn't have to be guessing out there."

In response, the State argued in rebuttal:

> "[PROSECUTOR]: I'm sure you figured out by now this is not CSI. It is not TV. It really doesn't work that way. Certainly we are not as efficient as TV. But anyway this resembles CSI as much as [NASA] space travel resembles Star [Trek]."

The State's comment was clearly invited by and in response to defense counsel's questions at trial

16

and comments in closing arguments, as well as based on the evidence adduced at trial.

While we do not find these complained-of comments improper, we note that, even if they were, improper arguments can be corrected by proper jury instructions, which carry more weight than the arguments of counsel. *People v. Lawler*, 142 Ill. 2d 548, 564 (1991); *People v. Chapman*, 262 Ill. App. 3d 439, 456 (1992). Moreover, any possible prejudicial impact is greatly diminished by the court's instructions that closing arguments are not evidence. See *People v. Perry*, 224 Ill. 2d 312, 348 (2007). Here, the court properly instructed the jury. Before closing arguments began, the trial court instructed the jury:

> "[THE COURT]: What the lawyers say during these closing arguments is not evidence, and should not be considered by you as evidence."

At the end of closing arguments, the trial court instructed the jury:

> "[THE COURT]: The law that applies in this case is stated in these instructions. * * * The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence."

We conclude that the complained-of comments were not error. Moreover, even if they were error, the error was cured by the admonishments given by the trial court.

IV. Excessive Sentence

17

Next, defendant contends that his sentence is excessive. Defendant was sentenced, based on his criminal history, as a mandatory Class X offender. 730 ILCS 5/5-5-3 (West 2008). Defendant does not contest his mandatory Class X sentencing status, but argues that his eight-year sentence should be reduced to the minimum six-year sentence. Specifically, defendant argues that this court should reduce his sentence because of: (1) the nonviolent nature of the crime; (2) the fact that his prior criminal history was primarily drug-related; (3) the hardship his wife and children will endure, as he was the children's primary caregiver during summer months; (4) and his rehabilitative potential as evidenced by his drug addiction and subsequent rehabilitation once incarcerated. We disagree.

A trial court has broad discretion in determining an appropriate sentence. *People v. Patterson*, 217 Ill. 2d 407, 447-48 (2005). A reviewing court will reverse the trial court's sentencing determination only where the trial court has abused its discretion. *Patterson*, 217 Ill. 2d at 448. A sentence within the statutory range does not constitute an abuse of discretion unless it varies greatly from the purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Henderson*, 354 Ill. App. 3d 8, 19 (2004). The trial court may appropriately consider the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age when sentencing a defendant. *People v. Fern*, 189 Ill. 2d 48, 53 (1999). Where mitigating evidence is presented to the trial court, it is presumed, absent some indication other than the sentence itself to the contrary, that the court considered it. *People v. Benford*, 349 Ill. App. 3d 721, 735 (2004). When determining the propriety of a particular sentence, we cannot substitute our judgment for that of the trial court simply because we would

weigh the sentencing factors differently. *Fern*, 189 Ill. 2d at 53.

The sentencing range for a Class X felony is 6 to 30 years' imprisonment. 730 ILCS 5/5-8-1 (West 2008). Defendant was sentenced to eight years' imprisonment.

At sentencing, the State argued in aggravation that defendant was a member of a street gang and has an extensive criminal history, including four convictions for possession of a controlled substance, as well as one for burglary. The State also argued that defendant has multiple children but does not pay child support. The State asked the court to sentence defendant for "significant penitentiary time."

In mitigation, defense counsel argued that defendant's criminal history includes mostly drug matters and that he was a drug addict who was seeking treatment. Defense counsel submitted two letters from the Chicagoland Prison Outreach stating that defendant had participated in the Life Skills Program and showing defendant's "willingness and his interest in changing his life and becoming a better person." Defense counsel noted for the court that defendant had five children and that this case involved only a small amount of drugs.

In sentencing defendant, the court stated it had taken into consideration the presentencing investigation report, as well as "all the factors in aggravation and mitigation," defendant's criminal history, and the arguments of counsel. Absent evidence to the contrary, we presume the trial court considered the above mitigating evidence. See *Benford*, 349 Ill. App. 3d at 735.

Based on this record, which establishes that the trial court reviewed defendant's pre-sentence investigation report, considered appropriate mitigating and aggravating factors, and sentenced defendant to a term within the permissible sentencing range, we find that the trial court

No. 1-08-2609

did not abuse its discretion.

## IV.  Presentence Credit

Next, defendant contends and the State properly agrees that the mittimus should be modified to correctly reflect the appropriate number of days he served in presentencing custody.

A defendant is entitled to credit for time spent in custody as a result of the offense for which a sentence is imposed. *People v. Williams*, 239 Ill. 2d 503, 507 (2011).  However, a defendant is not entitled to presentence custody credit for the day on which he is remanded to the Department of Corrections. *Williams*, 239 Ill. 2d at 510 ("the date a defendant is sentenced and committed to the Department is to be counted as a day of sentence and not as a day of presentence credit").

Here, the mittimus was issued on August 12, 2008, the same day that defendant was sentenced.  Accordingly, defendant is not entitled to credit for that day.  He is, however, entitled to credit for 376 days of presentence custody, as the record reflects that defendant was arrested on August 2, 2007, and sentenced on August 12, 2008.  The mittimus incorrectly reflects a credit of 372 days.  Pursuant to our authority under Supreme Court Rule 615(b)(1), we order the clerk of the circuit court to correct the mittimus to reflect a credit of 376 days of presentencing custody.  Ill. S. Ct. R. 615(b)(1); *People v. McCray*, 273 Ill. App. 3d 396, 403 (1995).

## VI.  Fines and Fees

Next, defendant contends that his fees order must be amended because several of the fees

20

assessed against him were improperly imposed. Specifically, he claims that the following fees assessed against him were improper: the DNA analysis fee (730 ILCS 5/5-4/3(j) (West 2008)); the $50 court system fee (55 ILCS 5/5-1101(c) (West 2008)); and the $5 court system fee (55 ILCS 5/5-1101(a) (West 2008)).

Defendant contends that the trial court improperly assessed the DNA analysis fee pursuant to section 5-4-3(j) of the Unified Code of Corrections (730 ILCS 5/5-4-3(j) (West 2008)). He argues that he should not be required to pay for DNA collection, analysis, or storage due to his prior felony convictions.[1] Specifically, he urges us to hold that, since he submitted DNA previously, requiring him to do so now is in contravention of the statute, which intends only a "single, one-time fee."

Defendant provided a DNA sample following an earlier conviction. We vacate the DNA analysis fee here because "the obvious purpose of the statute is to collect from a convicted defendant a DNA profile to be stored in a database. See 730 ILCS 5/5-4-3(e) (West 2006). Once a defendant has submitted a DNA sample, requiring additional samples would serve no purpose." *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009); accord *People v. Rigsby*, 405 Ill. App. 3d 916 (2010), *People v. Unander*, 404 Ill. App. 3d 884, 887 (2010) (DNA analysis fee vacated where trial court ordered defendant to submit a DNA sample and pay the fee only if he

---

[1]Initially, defendant presented this argument without documentation. Upon submitting his reply brief, however, he also submitted a motion to supplement the record, which included the sentencing order from a prior conviction. We granted the motion. That sentencing order reflects that defendant was required to submit his DNA and was assessed a fee for doing so.

had not already done so, and the record showed he had previously done so), *People v. Bomar*, 405 Ill. App. 3d 139 (2010) (McDade, J., concurring in part and dissenting in part) (The majority declined to address the forfeited DNA analysis fee issue after finding no plain error. Justice McDade, dissenting, argued that requiring defendant to "submit and pay an analysis fee for multiple DNA samples * * * is neither supported by logic or required by law."); but see *People v. Anthony*, No. 1-09-1528 (Mar. 31, 2011); *People v. Hubbard*, 404 Ill. App. 3d 100 (2010); *People v. Marshall*, 402 Ill. App. 3d 1080 (2010)[2]; *People v. Grayer*, 403 Ill. App. 3d 797 (2010).

Next, defendant claims that the $50 court system fee that was imposed should be vacated because it is unauthorized pursuant to section 5-1101(b) of the Counties Code (55 ILCS 5/5-1101(b) (West 2008)). Defendant errs in this reasoning, however, because the $50 court system fee imposed in this case is authorized by section 5-110(c) of the same statute (55 ILCS 5/5-1101(c) (West 2008)). Specifically, that statute authorizes:

> "(c) A fee to be paid by the defendant on a judgment of
>
> guilty or a grant of supervision [under Section 5-9-1 of the Unified
>
> Code of Corrections as follows:
>
> (1) for a felony, $50[.]" 55 ILCS 5/5-1101(c) (West 2008).

---

[2]At the time of this opinion, *People v. Marshall*, 402 Ill. App. 3d 1080 (2010), *appeal allowed*, 237 Ill. 2d 577 (2010), is pending before our supreme court. In *Marshall*, the Third District held that the trial court had authority to order a defendant to submit a DNA sample and pay the DNA analysis fee although his DNA was already on file from a previous conviction.

Accordingly, the court system fee may be levied against a person for a judgment of guilt or grant of supervision. Defendant was convicted of delivery of a controlled substance, which is a felony. Therefore, the $50 fee is appropriate.

Finally, defendant claims, the State concedes, and we agree that the $5 court system fee (55 ILCS 5/5-1101(a) (West 2008)) must be vacated because his narcotics conviction is not related to the Illinois Vehicle Code or a similar municipal ordinance. See 55 ILCS 5/5-1101(a) (West 2008); *People v. Price*, 375 Ill. App. 3d 684, 698 (2007).

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court and modify the mittimus.

Affirmed as modified.

JUSTICE HOWSE, concurring in part and dissenting in part:

I concur in part and respectfully dissent in part. Although I agree with the majority's decision to affirm defendant's conviction and sentence, I believe we should follow our earlier decisions in *Anthony*, *Hubbard*, *Marshall* and *Grayer*, and also affirm the trial court's order requiring defendant to submit an additional DNA sample and pay the $200 DNA analysis fee. See *Anthony*, No. 1-09-1528; *Hubbard*, 404 Ill. App. 3d at 102; *Marshall*, 402 Ill. App. 3d at 1082; *Grayer*, 403 Ill. App. 3d at 798-99.

In both *Anthony* and *Hubbard*, this court analyzed the statutory language used in section 5-4-3 and agreed with the holdings in *Grayer* and *Marshall* that a defendant may be ordered to

23

submit a DNA sample and be assessed the DNA fee regardless of whether a DNA sample was previously ordered or the fee was previously assessed. See *Anthony*, No. 1-09-1528; *Hubbard,* 404 Ill. App. 3d at 103 (citing *Grayer*, 403 Ill. App. 3d at 801); *Marshall*, 402 Ill. App. 3d 1082-83. The courts reasoned that although the legislature was clearly aware of recidivism, the language used in the statute itself did not limit the taking of DNA samples or the assessment of the analysis fee to a single instance. See *Anthony*, No. 1-09-1528; *Hubbard*, 404 Ill. App. 3d at 102; *Grayer*, 403 Ill. App. 3d at 801; *Marshall*, 402 Ill. App. 3d at 1083. Moreover, the courts found collecting a new DNA sample under section 5-4-3 whenever a defendant is newly convicted of a qualifying offense does not cause any injustice or a significant inconvenience, recognizing the ability to obtain fresh samples and the ability to subject the new samples to new methods of collecting, analyzing and categorizing DNA constitute two important reasons for doing so. *Hubbard*, 404 Ill. App. 3d at 103; *Grayer*, 403 Ill. App. 3d at 801; *Marshall*, 402 Ill. App. 3d at 1083.

Because the plain language of section 5-4-3 clearly authorized the trial court to order defendant to submit his DNA and pay the $200 analysis fee--regardless of whether or not defendant's DNA was already on file due to an earlier conviction--I would find the trial court's order assessing the $200 analysis fee should not be vacated. See *Anthony*, No. 1-09-1528; *Hubbard*, 404 Ill. App. 3d at 102; *Marshall*, 402 Ill. App. 3d at 1082; *Grayer*, 403 Ill. App. 3d at 798-99.

24